# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

William R. Dunlap,                                         Case No. 3:16-cv-2965

        Plaintiff,

v.                                                         MEMORANDUM OPINION
                                                        AND ORDER

Township of Harris,
County of Ottawa, Ohio, et al.,

        Defendants.

## I.  INTRODUCTION

Defendants Township of Harris, County of Ottawa, Ohio, Beverly K. Haar, Jerald A. Haar, and Carol A. Baker, seek summary judgment on Plaintiff William R. Dunlap's claims for denial of his procedural due process rights in violation of 42 U.S.C. § 1983, age discrimination, and negligence. (Doc. No. 13). Dunlap opposes the motion, (Doc. No. 14), and Defendants have filed a brief in reply. (Doc. No. 18). For the reasons stated below, Defendants' motion is granted.

## II.  BACKGROUND

Dunlap served Harris Township for approximately fifteen years, first as an Emergency Medical Technician and then as a firefighter. Dunlap rose through the ranks of the Harris-Elmore Fire Department, obtaining the rank of Captain, until June 14, 2016, when Fire Chief James Wilburn called Dunlap into his office and informed Dunlap that he was being demoted from his command officer position and returned to the "general ranks" of the Harris-Elmore Fire Department. (Doc. No. 12 at 113).

Dunlap felt "blindsided" by the meeting. (Doc. No. 12 at 75). Dunlap had not previously been notified of the accusations against him and had not received a verbal or written reprimand. (Doc. No. 12 at 73-74). Chief Wilburn also had not discussed the accusations with the assistant fire chief, Charlie Almroth, who also attended the June 14 meeting. (Doc. No. 12 at 8). After Chief Wilburn told Dunlap he would be demoted for failure to conduct business as a command officer, Dunlap left the meeting room. (Doc. No. 12 at 9). Assistant Chief Almroth "begged [Dunlap] to come back in and talk this over," but Dunlap refused, saying "I have no idea how this transpired or what's going on." (Doc. No. 12 at 9).

Sometime after leaving the meeting, Dunlap concluded the Chief's decision arose from an incident 18 months prior, when Dunlap's son was injured at a high school bonfire. (Doc. No. 12 at 9-10). Dunlap asserts Chief Wilburn instructed other firefighters to obtain an improper fuel mixture to light the bonfire, and that Dunlap's son was burned when the fumes from this mixture ignited (Doc. No. 12 at 9-10, 39-42). Dunlap states Chief Wilburn planned to get rid of Dunlap from that point forward because Dunlap had "belittled him and [Chief Wilburn] felt I stabbed him in the back and double crossed him over the bonfire deal . . . ." (Doc. No. 12 at 46).

Dunlap appealed his demotion to the Harris Township Board of Trustees, requesting that he be reinstated to his rank as Captain. (Doc. No. 12 at 114). The Board of Trustees formed a personnel committee to hear Dunlap's appeal. (Baker affidavit, Doc. No. 13 at 19-20). Assistant EMS Chief Mike McGinnis was appointed as the chairperson of the personnel committee. (Doc. No. 12 at 92; Doc. No. 13 at 20). Assistant EMS Chief McGinnis then appointed four other members of the Harris-Elmore Fire Department to the personnel committee – Jeff Berkel, Ken Hazel, Josh Parlette, and Clay Finken. (McGinnis affidavit, Doc. No. 13 at 33).

The personnel committee met with Dunlap and a number of witnesses on his behalf on June 29, 2016. (Doc. No. 13 at 33). Dunlap requested that the personnel committee conclude Chief

2

Wilburn's actions were not in line with Department policy and asked that he be reinstated to the rank of Captain. (Doc. No. 12 at 78; Doc. No. 13 at 37-38). Dunlap further asked that he be allowed to retire as a Captain.[1] (Doc. No. 12 at 78; Doc. No. 13 at 37-38).

The personnel committee concluded Chief Wilburn followed department policy in demoting Dunlap but recommended "[g]iven Captain Dunlap's dedicated years of service to the Harris-Elmore Fire and EMS Divisions . . . to allow Captain Dunlap to retire from the Department immediately at his request." (Doc. No. 13 at 38). Assistant EMS Chief McGinnis subsequently presented the committee's report to the Board of Trustees. (Bd. of Trustees meeting minutes, 7/18/16, Doc. No. 13 at 30). The Board of Trustees unanimously accepted the personnel committee's recommendations. (Doc. No. 13 at 20).

Dunlap then filed suit, alleging the Board of Trustees' decision violated federal and state law.

### III. STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its

---

[1] Dunlap submitted an affidavit along with his brief in opposition to Defendants' motion for summary judgment in which he claims that he never requested retirement after his demotion. (Doc. No. 14-1 at 2). This affidavit, without explanation, contradicts Dunlap's earlier deposition testimony – Q: "Do you remember requesting immediate retirement at fire captain rank?" A: "Yes." (Doc. No. 12 at 78). As Defendants note, this contradiction cannot be used to create a genuine dispute of material fact. *See, e.g., Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999).

3

resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

## IV. ANALYSIS

Dunlap asserts three claims for relief: (1) denial of his procedural due process rights in violation of 42 U.S.C. § 1983; (2) age discrimination in violation of Ohio Revised Code § 4112.02; and (3) negligence. (Doc. No. 6).

### A. PROCEDURAL DUE PROCESS

A plaintiff may bring a claim under § 1983 for the deprivation of the plaintiff's constitutionally-protected interest in "life, liberty, or property" without due process of law. *See, e.g., Zinermon v. Burch*, 494 U.S. 113, 126 (1990). The Due Process Clause generally requires "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (emphasis in original)). "[I]n situations where predeprivation process is not feasible, such as where quick state action is essential, or where the loss of property is caused by random and unauthorized conduct, postdeprivation state remedies will satisfy due process concerns." *Watts v. Burkhart*, 854 F.2d 839, 842 (6th Cir. 1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981) (overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986))). Dunlap's claims fall short under either mode of analysis.

First, the Due Process Clause requires that a state provide "an opportunity" for "some kind of hearing" before depriving someone of a protected property interest. *Loudermill*, 470 U.S. at 542 (citations omitted). The Constitution does not mandate the form of that hearing, nor does it require a government actor to wait to take action until the point at which the individual facing the deprivation agrees to participate. Dunlap admits Chief Wilburn called Dunlap to a meeting on June 14, 2016, to notify Dunlap he would be demoted as of June 17, 2016. (Doc. No. 12 at 9, 113).

4

While it is understandable Dunlap may have felt blindsided by Chief Wilburn, Dunlap chose to leave the meeting and chose not to return despite being urged to do so by Assistant Chief Almroth. (Doc. No. 12 at 9). Dunlap had an "opportunity . . . to present his side of the case" but declined to do so. *Loudermill*, 470 U.S. at 543.

Further, if I consider Dunlap's argument that Chief Wilburn was acting out a personal vendetta when he demoted Dunlap to mean that Chief Wilburn acted outside of department policy and therefore without authorization from Harris Township, (Doc. No. 12 at 9-10, 46), Dunlap does not "plead [or] prove that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). After his demotion purportedly took effect on June 17, 2016, Dunlap attended and presented witnesses at a hearing before a personnel committee appointed by the Board of Trustees, who subsequently reviewed the committee's report and adopted their recommendation. Dunlap had the opportunity to challenge "the sufficiency of the cause of [demotion]" by appealing to the Ottawa County, Ohio Court of Common Pleas, but did not do so. Ohio Rev. Code § 505.38(A).

Moreover, the "unauthorized intentional deprivation" of Dunlap's property interest in his position as Captain "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdepreviation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Dunlap fails to establish the post-demotion procedural steps he utilized – or chose not to utilize – were not meaningful.

Dunlap also asserts Defendants did not tell him what the complaints purportedly underlying Chief Wilburn's decision involved. (Doc. No. 14 at 18). This argument, however, is inconsistent with the contemporaneous evidence, including Dunlap's own letter to the Board of Trustees seeking to appeal his demotion. (*See* Doc. No. 12 at 114 ("According to Chief Wilburn, a formal complaint was made against me in which the complainant disagreed with my actions. According to the [Harris-

5

Elmore Fire Department] Association By-Laws . . . , I as a Commanding Officer was within my scope of power when I gave verbal counseling to the complainant. I requested First Captain Roger be a witness to the verbal counseling.")). Dunlap fails to establish there is a genuine dispute as to whether he was informed of the circumstances of the complaints against him.

Finally, Dunlap offers several other challenges to the post-demotion process, including that the review committee was not properly appointed and that the appropriate committees were not formed to hear his appeal. (Doc. No. 12 at 86-90). Though the Fire Department's policies provide for additional procedural protections, those protections do not replace or increase the constitutional protections Dunlap is guaranteed under the Due Process Clause. Therefore, evidence that Defendants failed to follow the Fire Department policies does not equate to evidence that Defendants failed to provide Dunlap with procedural due process.

I conclude Dunlap fails to identify a genuine dispute of material fact and that Defendants are entitled to summary judgment on his procedural due process claim.

### B. AGE DISCRIMINATION

Dunlap also contends Defendants discriminated against him on the basis of his age in violation of Ohio law. Dunlap may establish a prima facie case of age discrimination by showing (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for his position, and (4) he was replaced by someone younger. *See, e.g., Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009). If Dunlap establishes a prima facie case, Defendants may proffer a nondiscriminatory reason for its actions, and Dunlap then must show the stated reason was pretextual and that his age was the "real reason" for the adverse employment action. *Id.* at 626.

Dunlap does not identify any references to, or implications of, his age, or assert he was replaced by someone younger, focusing instead on the question of whether he suffered an adverse employment action. (Doc. No. 14 at 20-21). Further, while he argues the Board of Trustees failed

6

to make an independent determination of the reasons underlying Chief Wilburn's decision to demote him, Dunlap does not offer any evidence that might permit a jury to conclude he was terminated because of his age. Instead, he claims the Board of Trustees merely adopted a decision based on Chief Wilburn's personal dislike for Dunlap – "The Trustees simply rubber stamped the decision of the Personnel Committee, who based its decision on the Chief's [two] letters, without knowledge of the specific facts pertaining to Mr. Dunlap's performance or any alleged complaints." (Doc. No. 14 at 23).

Dunlap cannot establish a prima facie case of age discrimination or show that the purported reason for his demotion merely was a pretext for age discrimination. Therefore, I conclude Defendants are entitled to summary judgment on Dunlap's age discrimination claim.

### C. NEGLIGENCE

Defendants assert Harris Township is immune from Dunlap's negligence claim under Ohio Revised Code Chapter 2744. Dunlap concedes this point. (Doc. No. 14 at 24). Defendants are entitled to summary judgment on this claim as well.

### V. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment, (Doc. No. 13), is granted.

So Ordered.

    s/ Jeffrey J. Helmick
    United States District Judge

7